{¶ 34} I respectfully, but strongly, dissent from the analysis and disposition of this case by the majority.
 {¶ 35} I conclude that the trial court applied the appropriate standard to the facts in the case sub judice as that standard was set forth in Troxel v. Granville (2000),530 U.S. 57 and as discussed in Oliver v. Feldner, 149 Ohio App.3d 114,2002-Ohio-3209, 776 N.E.2d 499. Those cases set forth that special weight must be given to a parent's decision regarding visitation with a non-parent, and that there is a presumption that a fit parent makes decisions in the best interests of the child. The Troxel court does not give guidelines on how a court is to determine whether that presumption has been rebutted. TheOliver decision does give some guidance on this issue. TheOliver decision indicates there must be some compelling reason set forth by the petitioning non-parents in order to interfere with a parent's fundamental right to care and control. InOliver, the Ohio 7th District Court of Appeals stated that, "[i]t is clear from Troxel that the "special weight" that must be given to a parent's childbearing decisions has constitutional implications, and to overcome that "special weight," there must be some showing of compelling reasons and circumstance to disregard the parent's wishes." Oliver, at 126.
 {¶ 36} While it is true that the Ohio Supreme Court has not yet spoken on this issue, I find that the Oliver decision seems to keep with the spirit of Troxel. It is also clear that the trial court in the case sub judice followed both Troxel andOliver. The last conclusion of law made by the trial court quotes the fifth headnote of Oliver: "Award of visitation to child's paternal grandparents, over express contrary desire of child's mother, was unconstitutional infringement on mother's fundamental due process right to make decisions concerning the child's care, custody and control, in absence of any evidence or argument that grandparents' petition arose out of desire to prevent actual or potential harm to child, that mother was unfit parent, or that grandparents had functioned as de facto parents, where grandparents expressed desire to allow child to have relationship with her father's family did not reflect compelling reason to interfere with mother's fundamental right to care and control."
 {¶ 37} The trial court, in the case sub judice, concluded that "[p]etitioners Randall and Lisa Talkington have failed to show a compelling reason why the State of Ohio through its courts should intervene in the care, custody or control of the child Logan Nicole Talington (sic) who lives with a fit and suitable parent,"
 {¶ 38} I do not agree with this court's analysis in Epps v.Epps, 2001 WL 914132 (Ohio 5th Dist.). That decision clearly allows trial courts to continue making visitation decisions involving parents and non-parents based on the best interest of the child, as best interest is determined using the criteria under R.C. 3109.051(D). Epps does not conclude that there is a presumption that a fit parent makes decisions in the best interests of his/her child, and that that presumption must be overcome by the non-parent who is seeking visitation.
 {¶ 39} I concede that the Ohio statute is very different from the statute analyzed in Troxel. However, it is clear inTroxel that the facial constitutionality of the statute was not as important as whether the statute had been applied so as to preserve the constitutional rights of fit parents.
 {¶ 40} These cases present difficult emotional issues, and, in Ohio, we have a history of applying best interest standards to visitation issues. Nevertheless, Troxel is the law of the land regarding federal constitutional rights.
 {¶ 41} Therefore, I respectfully dissent from the majority. I would affirm the trial court.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is reversed.